UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 09-60364-CIV-GOLD/McALILEY

EUGENE ANDERSEN,

Plaintiff,

vs.

UNITED STATES, et. al.

Defendants.

_______________________________________/

ORDER GRANTING DEFENDANT UNITED STATES' MOTION FOR SUMMARY JUDGEMENT [DE 18]

THIS CAUSE is before the Court on Defendant United States of America's ("United States") Motion for Summary Judgment [DE 18] ("the Motion"). Plaintiff Eugene Andersen ("Plaintiff" or "Andersen") filed a Memorandum of Law in Opposition [DE 22] ("the Response") and the United States filed a Reply Memorandum [DE 26 ("the Reply"). Oral argument on the Motion was held on October 16, 2009. Having considered the record, the parties' arguments, and the relevant case law, I grant the United States' Motion for Summary Judgment regarding whether, for the purposes of the Federal Tort Claims Act, Defendant Michael Parker was acting in the scope of his employment as an Assistant Special Agent in Charge with the United States Postal Service when he allegedly falsely imprisoned and battered the Plaintiff during a confrontation over a parking sticker.

## I. Background

In support of its Motion for Summary Judgment, the United States submitted a Statement of Material Facts As To Which There Exists No Genuine Issue to Be Tried [DE 19] ("Def. SUF") and supporting exhibits. Plaintiffs then submitted a Statement of Material

Facts in Opposition, including a response to Defendants' SUF ("Pl. SUF Resp.") and a Statement of Additional Material Facts ("Pl. AMF"). Upon review of the record, including the parties' statements of facts and the relevant exhibits, as well as the parties' representations at oral argument, I conclude that the following material facts are undisputed and supported by evidence in the record.[1]

During the month of August, 2006, Plaintiff Eugene Andersen ("Andersen" or "Plaintiff") worked as a security guard at the Villages of San Simeon, a Florida residential community. (Def. SUF ¶ 6). During that period of time, Defendant Michael Parker ("Parker" or "Defendant") was employed by the United States Postal Service Officer of Inspector General as an Assistant Special Agent in Charge ("U.S.P.S. Assistant Special Agent"). (*Id.* at ¶ 1). As a U.S.P.S. Assistant Special Agent, Defendant Parker was responsible for investigating internal crimes, that is, crimes committed by employees of the Postal Service. (Def. SUF ¶ 2).

On the evening of August 3, 2006, Plaintiff observed a blue Crown Victoria parked on the street, in violation of applicable regulations, and placed a parking violation warning sticker on the vehicle's window. (*Id.*). The subject Crown Victoria was a take-home car that Defendant Parker used in connection with his employment as a U.S.P.S. Assistant Special Agent and was equipped with emergency lights. (Pl. AMF ¶ 19); (Parker Sworn Statement 22:490 - 23:493 [DE 6-4]). At the time the sticker was placed on the car, Parker

---

1 In the Southern District of Florida, a party moving for summary judgment must submit a statement of undisputed facts. *See* S.D. Fla. L.R. 7.5. If necessary, the non-moving party may file a concise statement of the material facts as to which it is contended there exists a genuine issue to be tried. *Id.* Each disputed and undisputed fact must be supported by specific evidence in the record, such as depositions, answers to interrogatories, admissions, and affidavits on file with the Court. *Id.* All facts set forth in the movant's statement which are supported by evidence in the record are deemed admitted unless controverted by the non-moving party. *Id.*

and a special agent colleague by the name of Donald Bolte were in the San Simeon neighborhood for a meeting at the residence of Special Agent Edward Wishneff regarding hurricane preparedness and multi-agency cooperation. (Def. SUF ¶ 11). Upon emerging from the meeting at Wishneff's house, Defendant Parker noticed the parking sticker on the Crown Victoria and became upset that his car had been stickered. (Def. SUF ¶ 11; Pl. SUF Resp. ¶ 7). After removing the sticker from the vehicle, he and Special Agent Bolte got into the car and drove away from Wishneff's residence. (Def. SUF ¶ 12).

As Plaintiff Andersen was handling an issue that had arisen with another vehicle that was in the process of being towed, he observed Defendant Parker's blue Crown Victoria pull into the area; the Crown Victoria's "emergency lights were activated for a short period." (Pl. AMF ¶ 19). Defendant Parker emerged from the blue Crown Victoria and confronted Andersen because he wanted to find out why Andersen put a sticker on his car and wanted to make sure Andersen wasn't "messing with [him] or whatever." (Pl. AMF ¶ 29; Pl. SUF ¶ 4). Parker testified that he "was upset . . approached the security guard . . . and [] grabbed him and told him, 'who the hell are you . . . did you put a sticker on my car?' " (*Id.* at ¶ 30). Parker claims he was also suspicious of the guard because bystanders in the vicinity were saying that the security guard and the tow truck driver were "illegally towing people." (*Id.*)

During the course of the confrontation with Andersen, Defendant Parker allegedly threatened, pushed, and temporarily detained Plaintiff Andersen, shouting: "I'm a Federal Law Enforcement Officer, you're impeding a Federal Investigation" and "[y]ou ticketed a federal law enforcement officer . . . [g]et against the car or I'm going to cuff you and take you downtown." (*Id.* at ¶ 19, 20). Neither party, however, identifies any actual federal

investigation that was being impeded, and Plaintiff does not controvert the fact that "[Parker] did not approach Andersen as part of any investigation within his jurisdiction." (Def. SUF ¶ 4) (emphasis added).

## II. Standard for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure authorizes summary judgment when the pleadings and supporting materials show that, drawing all inferences in favor of the nonmovant, there is no genuine issue as to any material fact and sumary judgment is proper as a matter of law. Fed.R.Civ.P. 56(c). The court must determine the relevant set of facts and draw all inferences in favor of the opposing party "to the extent supportable by the record." *Scott v. Harris*, 550 U.S. 372, 381 n. 8, 127 S. Ct. 1769, 1776 n. 8 (2007). The requirement to view the facts in the nonmoving party's favor extends only to "genuine" disputes over material facts. *Id.* at 380 (quoting Federal Rule Civil Procedure 56(c)). A genuine dispute requires more than "some metaphysical doubt as to the material facts." *Id.* at 380 (quotation marks and citation omitted). A "mere scintilla" of evidence is insufficient; the non-moving party must produce "substantial evidence" in order to defeat a motion for summary judgment. *Kesinger v. Herrington*, 381 F.3d 1243, 1249-50 (11th Cir. 2004). Furthermore, summary judgment is appropriate even if "some alleged factual dispute" between the parties remains, so long as there is "no genuine issue of material fact." *Scott*, 550 U.S. at 380 (internal quotes and citation omitted).

The moving party bears the initial burden under Rule 56(c) of demonstrating the absence of a genuine issue of material fact. *Allen v. Tyson Foods, Inc.,* 121 F.3d 642, 646 (11th Cir. 1997). Once the moving party satisfies this burden, the burden shifts to the party

opposing the motion to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Celotex v. Catrett,* 477 U.S. 317, 324 (1986).

The court's focus in reviewing a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); *Bishop v. Birmingham Police Dep't*, 361 F.3d 607, 609 (11th Cir. 2004). In determining whether to grant summary judgment, the court must remember that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255. However, where no reasonable juror could find in the non-moving party's favor, summary judgment is appropriate. *Stewart v. Happy Herman's Cheshire Bridge*, Inc., 117 F.3d 1278 (11th Cir. 1997).

## III. Analysis

Plaintiff's complaint asserts two counts against Defendant United States of America: Count III alleges "false arrest/false imprisonment of Plaintiff by Defendant Parker in the course and scope of his employment for Defendant United States of America," and Count IV alleges "battery/unnecessary use of force by Defendant Parker in the course and scope of his employment for Defendant United States of America." [DE 1, ¶ 80, 86]. Defendant United States argues that it is entitled to summary judgment because it refused to certify that Defendant Parker was in the scope and course of his employment at the time of the subject incident, *see* 28 U.S.C. § 2679(d)(1), and that its non-certification is conclusive for the purposes of determining whether the United States is vicariously liable for Defendant

Parker's actions pursuant to the Federal Tort Claims Act, 28 U.S.C. § § 1346(b)(1), 2674 ("the FTCA"). In response, Plaintiff argues that Defendant United States' refusal to certify per 28 U.S.C. § 2679(d)(1) is subject to challenge and judicial review, and that pursuant to Florida law,[2] a genuine issue of material fact exists as to whether Defendant Parker was within the scope of his employment at the time he allegedly battered and falsely imprisoned Plaintiff Andersen.

A. Whether the United States' § 2679(d)(1) Non-Certification Decision is Subject to Judicial Review

In tort actions proceeding under the FTCA, the question of whether a United States employee was acting within the scope or course of employment at the time of the alleged tort is critical, and can sometimes be dispositive of United States' potential liability: If it is established that an employee was not within the scope or course of employment, then the United States is immune from liability; however, if the employee was acting within the scope of employment as defined by the law of the place in which the alleged tort was committed, sovereign immunity is often waived – subject to statutory exemptions – and the case may proceed against the United States, which can then be substituted for the tortfeasor as a party defendant. *See* 28 U.S.C. § 1346(b) (providing, in pertinent part, that district courts have exclusive jurisdiction of tort claims against the United States for damages caused by the wrongful acts of government employees acting within the scope

---

[2] Pursuant to the FTCA, the United States waives sovereign immunity only if the tortfeasor employee was acting within the scope of employment at the time of the alleged tort, as defined by *the law of the state in which the alleged tort was committed.* *Williams v. United States*, 350 U.S. 857, 857, 76 S.Ct. 100, 100 (1955). *See also Williams v. United States*, 314 Fed.Appx. 253, 258-59 (noting that United States waives sovereign immunity for claims arising out of, *inter alia*, assault, battery, and false imprisonment committed by an investigative or law enforcement officer of the United States to the extent that a private person would be liable for such acts of its employees in accordance with state law.) (citing 28 U.S.C. § § 2680(h), 1346(b)).

of their employment, if a private person would be liable under the circumstances and in accordance with the law of the place where the employee commits the act); 28 U.S.C. § 2674 (providing that the United States shall be liable for tort claims in the same manner and to the same extent as a private individual under like circumstances); *Williams v. United States*, 350 U.S. 857, 857, 76 S.Ct. 100, 100 (1955); 28 U.S.C. § 2679(d)(3) (articulating procedure for substitution of United States as party defendant).

Pursuant to the Federal Employees Liability Reform and Tort Compensation Act ("the Reform Act"), commonly known as the Westfall Act, the Attorney General of the United States or its designate, the U.S. Attorney,[3] can certify whether or not an alleged federal employee tortfeasor was acting within the scope of employment at the time of the subject incident. 28 U.S.C. § 2679(d). This certification is conclusive and unreviewable for purposes of removal to federal court. 28 U.S.C. § 2679(d)(2). However, it is well-established in this Circuit that the certification decision is subject to judicial review following removal and, at best, functions as "prima facie evidence that the employee conduct at issue occurred within the scope of employment." *S.J. & W. Ranch, Inc. v. Lehtinen,* 913 F.2d 1538, 1543 (11th Cir. 1990).

Here, the U.S. Attorney *refused* to certify that Mr. Parker was acting within the scope of his employment at the time [DE 18, p.2]. Defendant United States argues that this refusal to certify absolutely "bars Plaintiff's challenge to the Government's invocation of sovereign immunity." [DE 18, p. 2]. Plaintiff, on the other hand, challenges the non-certification, intent on proceeding against the United States pursuant to the FTCA given

---

[3] *See* 28 C.F.R. § 15.3(a) (providing that U.S. Attorney for place where civil action is proceeding is Attorney General's delegate for purposes of Reform Act scope of employment certifications.)

that "Parker is no longer a federal employee and cannot be located." [DE 22, p.16]. In response to Defendant's argument that non-certification is conclusive, Plaintiff asserts that § 2679(d) scope certifications and non-certifications alike are always subject to judicial review, except for purposes of removal to federal court, citing *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 419 115 S.Ct. 2227, 22229 (1995) and *S.J. & W. Ranch, Inc.*, 913 F.2d at 1543.

Having reviewed the *Gutierrrez de Martinez* and *S.J. & W. Ranch* decisions, I agree with Plaintiff that § 2679(d) scope of employment certifications are dispositive only for the purposes of removing an FTCA action from state to district court. Though circuits were previously split on the question of whether scope certification decisions are reviewable by district courts other than for purposes of removal, the Eleventh Circuit conclusively established in *S.J. & W. Ranch* that Congress could not have intended the Attorney General – or its delegate – to be the "final arbiter of a controversy affecting both the parties' rights and liabilities," for such an interpretation would implicate plaintiffs' due process rights by effectively "permit[ting] the Attorney General to arbitrarily deprive a plaintiff of a cause of action without a meaningful opportunity to be heard and other procedural safeguards." 913 F.2d at 1538.[4] These same due process concerns are implicated here, where treating the Attorney General's non-certification decision as incontrovertible would conclusively determine Plaintiff's rights and remedies. Accordingly, I hold that the decision not to certify that Defendant Parker was in the scope of his

---

[4] Five years later, the Supreme Court of the United States endorsed and adopted the Eleventh Circuit's view on this question in *Gutierrez de Martinez*, holding that "[t]he statute is fairly construed to allow petitioners to present to the District Court their objections to the Attorney General's scope-of-employment certification" and that Congress "preserv[ed] judicial review of scope-of-employment certifications." 515 U.S. at 436-47.

employment is subject to my review based on the undisputed facts before me.

B. Determining Whether Parker Was in the Scope of His Employment

In light of my conclusion that the scope of employment non-certification is subject to judicial review, the next and last question I need to address is whether the undisputed facts establish that, as a matter of Florida law, Defendant Parker[5] was or was not in the scope of his employment as a U.S.P.S. Assistant Special Agent when he allegedly falsely imprisoned and battered the Plaintiff during the August 3, 2006 parking sticker confrontation.

In Florida, the doctrine of *respondeat superior* does not impose vicarious liability upon an employer for the tortious acts of an employee *unless* "the acts were committed during the course of the employment." *Iglesia Cristiana La Casa Del Senor, Inc.* v. *L.M.*, 783 So. 2d 353, 356 (Fla. 3d DCA 2001). Under Florida law, "[a]n employee's conduct is within the scope of his employment, where (1) the conduct is of the kind he was employed to perform, (2) the conduct occurs substantially within the time and space limits authorized or required by the work to be performed, *and* (3) the conduct is activated at least in part by a purpose to serve the master" rather than "the employee's own [interests]." *Id.* at 356-57 (emphasis added).

Assaults and batteries committed by employees are not considered to be within the scope of employment where there is no connection between the purpose of the employee's

---

5

Despite dedicating only a few sentences of his brief to joint and several liability, Plaintiff focused heavily on this issue at oral argument, asserting that the FTCA scope of employment analysis should also encompass agents Wishneff and Bolte, who allegedly "took active roles in Andersen's temporary detention." (Pl. SUF ¶ 7). I find this argument to be untimely and without merit, for the only FTCA claims the operative complaint asserts against the United States arise out of tortious acts allegedly committed specifically by Defendant Parker. [DE 1, ¶ 80, 86].

act and the employer's interests. *Perez v. Zazo*, 498 So. 2d 463, 465 (Fla. 3d DCA 1986) (holding that landlord was not liable for manager's stabbing of Plaintiff-tenant as a matter of law because purpose of stabbing was not to serve landlord's interests, even though manager was angrily responding to tenant's earlier request for hot water when he stabbed the Plaintiff).

This is true even where an on-duty officer uses indicia of law enforcement authority – such as a police car and a uniform – during the commission of an assault or battery. *City of Green Cove Springs v. Donaldson*, 348 F.2d 197, 202 (5th Cir. 1965) (reversing jury verdict for plaintiff and holding that sexual assault by officer in police car was outside the course and scope of his employment as a matter of Florida law because scope of employment "does not extend to cases in which 'the servant has stepped aside from his employment to commit a tort which the master neither directed in fact, nor could be supposed, from the nature of his employment, to have authorized or expected the servant to do.' ") (citation omitted).

However, where there is a "relationship between the employee's wrong and the employer's interests," the scope of employment question is one of fact and is properly submitted to the fact-finder.[6] *See e.g., Forster v. Red Top Sedan Svc.*, 257 So.2d 95, 96 (Fla. 3d DCA 1972) (reversing grant of directed verdict in favor of Defendant where bus

[6] At oral argument, the parties conceded that Plaintiff's FTCA claims would be tried by the Court, for the FTCA does not provide for trial by jury. It was also conceded by Plaintiff that Defendant Parker has not been served and cannot be located for deposition, and thus would likely be unable to provide any testimony beyond the sworn statements which are already of record. When asked what evidence the court might hear at trial that has not already been made of record, Plaintiff's counsel responded "I have no idea." However, my ruling on Defendant's motion is not based on these evidentiary uncertainties. Rather, in assessing Defendant's motion I draw all inferences in favor of the Plaintiff and assume *arguendo* that he would be able to corroborate his factual assertions at a trial with otherwise admissible evidence.

driver employee of Defendant ran Plaintiffs off highway and assaulted them, telling Plaintiffs that "no old bastard would delay his schedule"); *Colombia By The Sea, Inc., v. Petty*, 157 So.2d 190 (Fla. 2d DCA 1963) (holding that question of whether ashtray-wielding maitre d's physical attack on customer in an attempt to collect extra charge for roquefort dressing was committed in the scope of employment was properly submitted to the jury.)

Here, Plaintiff argues that Defendant Parker was in the scope of his employment as a U.S.P.S. Assistant Special Agent when he battered and falsely imprisoned Plaintiff, pointing primarily to the following facts: (1) Defendant Parker was performing work-related activities just prior to the incident and the incident involved Defendant Parker's work vehicle; (2) Defendant Parker used indicia of law enforcement authority (e.g., police lights) during the subject incident; (3) Defendant Parker shouted at Plaintiff that he was impeding a non-existent federal investigation; and (4) Defendant Parker's actions were motivated by a desire to protect his government vehicle. According to Plaintiff, these facts are sufficient to send the scope of employment question to the jury.

Although Plaintiff is correct insofar as the scope of employment question can be for the jury *provided* there is a relationship between the employee's wrong and the employer's interests,"that connection is totally non-existent" in the instant matter. *Perez,* 498 So. 2d at 465. Simply put, I am unable to "discern any indication whatever that any purpose of the [United States Postal Service] was being served or could have been intended by [Defendant Parker] to have been served" by the battery and false imprisonment of Plaintiff Andersen. *Id.*

Under Florida law, evidence that Defendant Parker was on the way to or from work and that the incident involved his work vehicle does not preclude a grant of summary judgment on the scope of employment question. *Garcia v. Hollywood*, 966 So. 2d 5, 6 (Fla. 4th DCA 2007) (affirming grant of summary judgment in favor of Defendant municipality and concluding that there was no scope of employment question for jury even though tortfeasor officer was driving to work in a "take-home" vehicle owned by the city at the time the alleged tort was committed).

Moreover, neither the fact that indicia of authority provided by the employer (e.g., police lights) were used during the incident nor the fact that Parker *claimed* to have been carrying out duties related to a federal investigation provide any support for the notion that Parker's conduct was *actually* motivated in part by a desire to serve his employer, especially in light of the fact that there was no ongoing investigation being conducted by Parker for the benefit of the United States Postal Service. *Iglesia Cristiana*, 783 So. 2d at 358 (concluding that, as a matter of law, priest was not in the scope of his employment when he molested a minor, even though priest told the minor he was going to "cure her" when attempting to isolate her); *Garcia,* 966 So. 2d at 6 (noting that "[t]he fact that a law enforcement officer is on call for duty and has a police radio and other indicia of his authority in his possession" does not establish that an officer is acting within the scope of his or her employment.) (quoting *Palm Beach County Sherriff's Office v. Ginn*, 570 So. 2d 1059, 1060 (Fla. 1st DCA 1990)); *see also City of Green Cove Springs v. Donaldson*, 348 F.2d at 202 (5th Cir. 1965) (concluding that sexual assault by uniformed police officer in police car was outside the course and scope of his employment as a matter of Florida law).

Finally, Plaintiff's argument that Parker's battery and false imprisonment of Andersen were motivated by Parker's desire to protect his employer's property (i.e., the car) is equally unavailing. Andersen concedes in his Statement of Undisputed Facts that the "sticker was removed" prior to the time Parker left Wishneff's house. (Pl. SUF ¶ 12). Accordingly, the "damage," if any, done to the government vehicle by virtue of having been stickered was remediated well-before the confrontation that gave rise to the alleged tortious act, and these circumstances do not provide support for the proposition that Parker's battery and false imprisonment were motivated by an interest to protect the property of his employer, since no property was actually at risk at the time of the alleged torts.[7] *Kesinger*, 381 F.3d at 1249-50.

C. Apparent Agency

Alternatively, Plaintiff asserts that even if Parker were not in the scope of his employment as a U.S.P.S. Assistant Special Agent, the doctrine of apparent agency could impose liability on the United States for Parker's tortious actions under the FTCA. [DE 22, pp. 14-15]. In support of this contention, Plaintiff asserts that, pursuant to Florida law, reasonable jurors could conclude that Parker was acting as an apparent agent of the U.S.P.S. because (1) Defendant Parker used police lights and other indicia of government authority during the course of the confrontation with Andersen; and (2) Andersen relied on, and submitted to, Parker's apparent authority to act on behalf of the United States government. *Id.* I reject Plaintiff's apparent authority argument, for it is well-settled that

[7] Neither party asserts that Parker's conduct may have been motivated by a desire to prevent Andersen from placing parking citation stickers on Postal Service vehicles in the future. Accordingly, I need not determine for the purposes of this Order whether proof of a motive of that nature might hypothetically defeat summary judgment.

"the doctrine of apparent agency is not a proper basis for a waiver of sovereign immunity under the FTCA." *Del Valle v. Sanchez*, 170 F. Supp. 2d 1254, 1267 n.15 (S.D. Fla. 2001).

## IV. Conclusion

Unlike the maitre d' in *Colombia By The Sea, Inc.*, Defendant Parker was not trying to obtain property or monies that he believed rightfully belonged to his employer. Nor is he akin to the bus driver in *Red-Top Sedan,* who attacked Mr. and Mrs. Forster in an attempt to remove an obstacle that was directly impeding his job performance. Rather, even viewing the undisputed facts in the light most favorable to the Plaintiff, it seems clear that Defendant Parker's actions were spurred by his anger at having received a "No Parking" sticker, and that his attack on Andersen was entirely motivated by a desire to intimidate Andersen and figure out if he was "messing with" Parker and others. No substantial evidence to the contrary has been presented. Because no reasonable juror could determine that Parker's sticker-triggered attack on Andersen was motivated by a desire to serve the United States Postal Service, Parker was not in the scope of his government employment as a matter of Florida law. Accordingly, it is hereby

ORDERED AND ADJUDGED THAT:

1. The United States' Motion for Summary Judgment [DE 18] is GRANTED.
2. All pending motions are DENIED AS MOOT and all hearings CANCELLED.
3. This case is ADMINISTRATIVELY CLOSED.

DONE AND ORDERED, in Chambers, in Miami, Florida, this 20 day of October 2009.

THE HONORABLE ALAN S. GOLD
UNITED STATES DISTRICT JUDGE

cc: Magistrate Judge Chris M. McAliley
All Counsel of Record